COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2492**

STATE OF WISCONSIN

Cir. Ct. No. **2023TR6014**

IN COURT OF APPEALS
DISTRICT I

COUNTY OF MILWAUKEE,

PLAINTIFF-RESPONDENT,

V.

TROY MICHAEL TORDOER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: MARISABEL CABRERA, Judge. *Affirmed*.

¶1 DONALD, C.J.[1] Troy Michael Tordoer appeals from a judgment of conviction under WIS. STAT. § 346.63(1)(b) (2021-22) for operating a motor

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

vehicle with a prohibited alcohol concentration ("PAC") as a first offense. Tordoer contends that the circuit court[2] erred in denying his motion to suppress the results of his blood alcohol test, arguing that his consent was coerced. For the reasons set forth below, we reject Tordoer's argument and affirm.

## BACKGROUND

¶2    For purposes of Tordoer's motion to suppress his blood alcohol test result, the following facts are not in dispute. On January 1, 2022, at approximately 2:46 a.m., Milwaukee County Sheriff's Deputy Quinton Miller observed Tordoer deviating from his designated lane of travel and stopped him. Deputy Miller had a conversation with Tordoer, during which he detected a strong odor of intoxicants on Tordoer's breath and observed that Tordoer's speech was heavily slurred. Tordoer admitted to having consumed beer and champagne at a friend's New Year's Eve party earlier that evening. After performing poorly on field sobriety tests, Tordoer was placed under arrest for operating a motor vehicle while under the influence and secured in the rear seat of Deputy Miller's squad car.

¶3    Deputy Miller then told Tordoer:[3]

> You're gonna go for some evidentiary testing. We're either going to go for a sample of your breath or your blood with your consent. If you don't consent, I'm going to have to get a warrant. That's probably going to take two, three hours. If you do consent, what's gonna happen, like I said, we're going to go up to the hospital, we're gonna get a blood draw of your blood, and then … somebody will be able to pick you up.

---

[2] Judge Jonathan D. Richards presided over the motion to suppress and Judge Marisabel Cabrera entered the judgment of conviction. We refer to both as the circuit court.

[3] Hereinafter referred to as the "Pre-IAF Statements."

Next, as required by Wisconsin's implied consent statute, WIS. STAT. § 343.305(4) (2021-22), Deputy Miller read the Informing the Accused ("IAF") form[4] to Tordoer, and asked him whether he would submit to an evidentiary chemical test of his blood. Tordoer consented to the blood test. The results showed that Tordoer had a blood alcohol concentration of 0.178, and he was charged with operating a motor vehicle with a PAC as a first offense.[5]

¶4    Tordoer filed a motion to suppress the blood alcohol test result on the ground that Deputy Miller impermissibly interfered with his right to freely and voluntarily consent to the blood test, in violation of the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution. Tordoer argued that the Pre-IAF Statements coerced his consent to the blood test by suggesting that, if he did not consent: (1) he would be detained for a

---

[4]  The relevant portion of the IAF form read:

You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, …

This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

[5]  Tordoer was also charged with operating while intoxicated ("OWI") as a first offense, and deviation from designated traffic lane.

3

significantly longer period of time; (2) he could not have someone "pick him up," implying that he may not be released; and (3) Deputy Miller would inevitably be able to obtain a search warrant authorizing the blood test.

¶5      The State contended that the Pre-IAF Statements were not coercive because they were true and reasonable predictions of what would happen if Tordoer refused the test:

> [I]t's simply a statement of what is likely to happen. … The fact is that warrants are routinely granted in these types of cases as a matter of course. And there is little question but that [the] deputy would have gotten a warrant had he had to apply for one. So, again, he's just being honest and truthful with the defendant about what the alternatives are and where each path will take him.

The State further argued that the Pre-IAF Statements were not "delivered in a coercive or overbearing manner, such as to make neutral language actually coercive," instead characterizing Deputy Miller's tone as "respectful."

¶6      At the motion hearing, the circuit court viewed bodycam footage of the traffic stop, including Deputy Miller's Pre-IAF Statements to Tordoer. In its oral ruling, the court applied the analysis set forth in *State v. Blackman*, 2017 WI 77, 377 Wis. 2d 339, 898 N.W.2d 774, and concluded that Tordoer's consent was voluntary. The court found that Deputy Miller's tone with Tordoer was congenial and non-threatening, and that Tordoer was cooperative and understood what he was being told. The court further found that the Pre-IAF Statements did not amount to an impermissible misrepresentation of fact or law, or suggest to Tordoer that he did not have a real choice, and instead were truthful explanations of the process. Accordingly, the court denied Tordoer's motion.

¶7 Tordoer was found guilty of operating a motor vehicle with a PAC as a first offense[6] and now appeals on the ground that the circuit court erred in denying his motion to suppress.

## DISCUSSION

¶8 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." *Id.*, ¶25 (citation omitted). "We review a question of constitutional fact under a two-step inquiry: First, we will uphold the circuit court's findings of fact unless those findings are clearly erroneous. Second, we conduct an independent, de novo analysis of the application of constitutional principles to the facts found." *Id.*

¶9 "The Wisconsin Legislature enacted the implied consent statute [WIS. STAT. § 343.305] to combat drunk driving" by "facilitat[ing] the collection of evidence[.]" *State v. Reitter*, 227 Wis. 2d 213, 223-24, 595 N.W.2d 646 (1999). "[T]he law was not created to enhance the rights of alleged drunk drivers. Rather, the implied consent statute was 'designed to secure convictions.'" *Id.* at 224 (footnote and citations omitted). Given these intentions, "courts construe the implied consent law liberally." *Id.* at 224-25.

¶10 However, "[b]lood draws are searches under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution," *Blackman*, 377 Wis. 2d 339, ¶53, and "[w]arrantless searches are per se unreasonable and are unlawful, subject to a few clearly delineated

---

[6] He was also found guilty of the OWI charge and the traffic lane offense. The OWI charge was dismissed prior to sentencing. Tordoer does not appeal his judgment as to the traffic lane offense.

exceptions." *Id.* (citation modified). The State relies on the consent exception, under which it must prove, by clear and convincing evidence, that Tordoer's consent to the blood draw was "given in fact by words, gestures, or conduct" and that his consent was voluntary. *State v. Artic*, 2010 WI 83, ¶30, 32, 327 Wis. 2d 392, 786 N.W.2d 430.

¶11 The parties agree that consent was given in fact, therefore the only issue presented on appeal is whether Tordoer's consent was voluntary. "Voluntary consent must be an essentially free and unconstrained choice, not the product of duress or coercion, express or implied." *Blackman*, 377 Wis. 2d 339, ¶56 (citation modified). "The determination of voluntariness is based upon an evaluation of the totality of the surrounding circumstances." *Id.*, ¶57. Our supreme court has provided multiple non-exclusive factors to determine whether consent was given voluntarily:

> (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him [or her] to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him [or her] by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he [or she] could refuse consent.

*Artic*, 327 Wis. 2d 392, ¶33.

¶12 On appeal, Tordoer does not challenge the circuit court's finding that Deputy Miller's tone with Tordoer was congenial and non-threatening, and that Tordoer was cooperative and understood what he was being told. He also does not

claim that Deputy Miller failed to inform him that he could refuse consent. Nevertheless, he argues that his consent was not voluntary because the Pre-IAF Statements, considered as a whole, were unconstitutionally coercive and rendered his consent involuntary. Tordoer claims that Deputy Miller's statement, "I'm going to have to get a warrant," misrepresented that he would "inevitably" obtain a warrant. He further asserts that the deputy's statements as to timing improperly "tied [Tordoer's] expeditious release directly to his submitting to the blood test." To support his position, Tordoer contends that he experienced coercion equivalent to that found impermissible in *Blackman* and *Bumper v. North Carolina*, 391 U.S. 543 (1968).

¶13 The State argues that Deputy Miller's statement that he would "have to get a warrant" is akin to stating that he would "look to get a warrant," which language was found to not invalidate consent in *State v. Gore*, 2025 WI App 11, ¶¶12, 35, 415 Wis. 2d 279, 18 N.W.3d 198. Regarding Deputy Miller's statements indicating that Tordoer would spend more time in custody if he did not consent, the State contends that this was a response to a question from Tordoer[7] and that Deputy Miller's "decision to respond truthfully to an arrestee's question by estimating the time that obtaining a warrant would take [was] not coercive,"

---

[7] At the circuit court hearing on Tordoer's motion to suppress, Tordoer claimed that Deputy Miller's statements were unsolicited, and the State argued that whether the statements were solicited or not had no bearing on the voluntariness of Tordoer's consent. In his opening brief on appeal, Tordoer does not address whether the statements were solicited, whereas the State asserts that they were made in response to a question from Tordoer about what would happen if he did not consent to the blood test. Tordoer does not refute the State's assertion in his reply brief, thus we may construe that as a concession that the statements were made in response to a question from Tordoer. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (a party's failure to refute an assertion made in a response brief may be taken as a concession). However, even if we assume the statements to be unsolicited, we still conclude that Tordoer's consent was voluntary.

and instead was "a positive contribution to a decision-making process because it allow[ed] [Tordoer] the ability to weigh his options with additional accurate information."

¶14 We agree with the State and conclude that Tordoer's consent was voluntary. First, the Pre-IAF Statements are not on par with those that rendered consent involuntary in **Bumper** and **Blackman**. In **Bumper**, the Supreme Court excluded evidence recovered from Bumper's grandmother's house on the ground that law enforcement coerced her consent to the search. *Id.*, 391 U.S. at 546, 550. The court concluded that Bumper's grandmother's consent to search her home was not voluntary because it was based on the officers' assertion that they had a warrant and "[w]hen a law enforcement officer claims authority to search a home under a warrant, he [or she] announces in effect that the occupant has no right to resist the search." *Id.* In contrast, Deputy Miller's warrant statement does not suggest the same lack of choice. While stating "I'm going to have to get a warrant" implies that Deputy Miller was confident in his ability to obtain a warrant, it is not a definitive statement that he already has one.

¶15 **Blackman** is also distinguishable. In that case, Blackman's car collided with a bicycle, severely injuring the bicyclist. *Id.*, 377 Wis. 2d 339, ¶¶10-11. The responding deputy read him the IAF, but the consequences threatened by the IAF did not accurately reflect the statutory consequences applicable to Blackman. *Id.*, ¶¶16-17, 37-38. The deputy also told Blackman that the department's standard operating procedure was to obtain a blood sample from drivers involved in serious accidents. *Id.*, ¶16. Blackman consented to the blood test, which showed a blood alcohol concentration of .104, and was charged, as relevant here, with OWI and operating with a PAC. *Id.*, ¶¶5, 18. The circuit court granted Blackman's motion to suppress the test results on the ground that his

consent was coerced by the misrepresented consequences of refusal. *Id.*, ¶19. On appeal, our supreme court found that the misrepresentation of the consequences of refusal, along with the deputy's statement that it was department policy to obtain a blood sample (from which Blackman could have inferred that his blood would be drawn regardless of whether he consented or not), were sufficiently coercive to render his consent involuntary. *Id.*, ¶¶63-65. We conclude that the Pre-IAF Statements here are not equivalent to the statements found coercive in ***Blackman***.

¶16 First, we do not view Deputy Miller's statement, "I'm going to have to get a warrant," as a misrepresentation. Instead, it accurately communicates that he did not yet have a warrant, but was confident in his ability to obtain one. We also note that there is no indication, or allegation, that Deputy Miller lied about his intent to obtain a warrant in order to "induce [Tordoer's] submission." *See Artic*, 327 Wis. 2d 392, ¶41 ("Threatening to obtain a search warrant does not vitiate consent if 'the expressed intention to obtain a warrant is genuine … and not merely a pretext to induce submission.'" (Citations omitted.)).

¶17 Second, Tordoer was not falsely threatened with a penalty that did not apply to him. Tordoer does not dispute that the consequences of refusal as set forth in the IAF were accurate.

¶18 Third, Deputy Miller's statements indicating that Tordoer would spend more time in custody if he refused the blood draw did not imply that he had no real choice; rather, they were a truthful and reasonable prediction of what

9

would happen if Tordoer refused.[8] *See **Village of Little Chute v. Walitalo***, 2002 WI App 211, ¶11, 256 Wis. 2d 1032, 650 N.W.2d 891 ("While police cannot use deceit or trickery, they are entitled to make true statements.").

¶19 Accordingly, we reject Tordoer's contention that the Pre-IAF Statements were impermissibly coercive, whether considered individually or as a whole. We further conclude that, taking into account the congenial nature of the interaction, the fact that Tordoer was properly read the IAF and was advised of his right to refuse, and Deputy Miller's non-threatening tone, under the totality of the circumstances, Tordoer's consent was voluntary. *See **Artic***, 327 Wis. 2d 392, ¶33.

## CONCLUSION

¶20 The State has proven, by clear and convincing evidence, that Tordoer's consent to the blood draw was "given in fact by words, gestures, or conduct" and that his consent was voluntary. *See **id.***, ¶¶30, 32. Therefore, the circuit court properly denied Tordoer's motion to suppress his blood alcohol test results and we affirm the judgment of conviction.

---

[8] In his reply brief, Tordoer also argues that Deputy Miller communicated that he did not have a real choice by "unequivocal[ly]" stating that he was "gonna get [his] blood." But Tordoer mischaracterizes this statement by omitting the context. Deputy Miller said: "If you do consent, what's gonna happen, like I said, we're going to go up to the hospital, *we're gonna get a blood draw* of your blood, and then … somebody will be able to pick you up." When considered in context, it is clear that Deputy Miller did not say that he would "get" Tordoer's blood whether he consented or not; rather, he said that they would get a blood sample *if Tordoer consented.* We remind litigants of their duty of candor to this court when characterizing the facts. *See* SCR 20:3.3.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.